# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>HAILANG XIE<br><br>Defendant(s) | )<br>)<br>)  Case No.   8:19-MJ-463 (GLF)<br>)<br>)<br>)<br>)<br>) |

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 25 2019
AT____ O'CLOCK____
John M. Domurad, Clerk - Plattsburgh

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of July 23, 2019 in the county of Saint Lawrence in the Northern District of New York the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §841(a)(1) and (b)(1)(C) | Possession with intent to distribute a controlled substance, to wit a mixture or substance containing a detectable amount of marijuana |

This criminal complaint is based on these facts:
See Attached

☒   Continued on the attached sheet.

*Complainant's signature*

Michael Barcelona, SA, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  July 25, 2019

*Judge's signature*

City and State:   Plattsburgh, NY              Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael E. Barcellona, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a peace officer as specified in Section 2.15, Subdivision 5, of the Criminal Procedure Law, my title being Special Agent, Drug Enforcement Administration, United States Department of Justice. I am currently assigned to the Plattsburgh Resident Office in Plattsburgh, New York. I have been a Special Agent with the Drug Enforcement Administration (DEA) since completion of the DEA Training Academy in Quantico, Virginia, in February 2017. After completion of the Basic Agent Training program, I was assigned to the Plattsburgh Resident Office, New York Field Division. In this capacity I work on the DEA Plattsburgh Task Force ("Task Force"), which comprises agents from the DEA, Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Border Patrol (USBP), New York State Police (NYSP), New York Department of Corrections and Community Supervision (NYSDOCCS), Clinton County Sheriff's Office (CCSO), Essex County Sheriff's Office, and Plattsburgh Police Department (PPD).

2. I have participated in numerous narcotics investigations, during the course of which I have conducted physical and telephonic wiretap surveillance, executed search warrants, and reviewed and analyzed recorded conversations and the records of drug traffickers. Through my training, education, and experience (including monitoring wiretapped conversations of drug traffickers and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activities to avoid detection by law enforcement.

3. I have participated in the investigation of complex narcotics enterprises, including major narcotics organizations. These investigations included the use of court-ordered eavesdropping. I have also conducted extensive analyses of telephone billing and call records for telephones used by narcotics traffickers. Members of the Task Force also have extensive experience in narcotics investigations, especially involving high-level narcotics traffickers and money launderers. I have had and continue to have conversations with them concerning this and other narcotics-related investigations.

4. I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials. The statements of fact contained in this affidavit are based upon my personal knowledge, participation in the investigation, information provided by agents of the DEA and other law enforcement agencies, analysis of documents, and my experience and training as a Special Agent. As a result of my participation in investigation, I am fully familiar with the facts and circumstances of the investigation.

## PROBABLE CAUSE

5. On July 23, 2019, at approximately 9:29 a.m., three vehicles were traveling together on State Route 374 and entered the on ramp to Interstate 87 in a southbound direction in the town of Plattsburgh in the Northern District of New York. The vehicles were: a 2018 Nissan Rogue, bearing Michigan registration DVM 1668; a 2019 gray Jeep, bearing New York registration JEF 9626; and a white Mercedes.

6. New York State Police (NYSP) Trooper Ronald Arnold observed the Jeep traveling very closely and directly behind the other two vehicles. Around the same time, Trooper Coupal saw that Nissan Rogue was following too closely to the Jeep, in violation of section 1129A of the New York State Vehicle and Traffic Law.

7.       All three vehicles continued onto Interstate 87 in a southbound direction. As the Jeep turned on the I-87 south on ramp at Exit 38, Trooper Arnold observed that the vehicle failed to signal, which is in violation of section 1163B of the New York State Vehicle and Traffic Law

### Stop of the Jeep and Seizure of Marijuana

8.       Trooper Arnold activated the emergency lights and sirens on his marked NYSP patrol vehicle and attempted to conduct a traffic stop of the 2019 Gray Jeep following the observed traffic violation. The 2019 Gray Jeep continued to travel southbound on I 87 and failed to comply with the lawful traffic stop. The 2019 Gray Jeep ultimately pulled to the shoulder of I 87 at which time Trooper Arnold identified the operator and sole occupant as Jen WONG.

9.       Trooper Arnold approached the 2019 Gray Jeep, and asked WONG for his driver's license. WONG presented Trooper Arnold with a New York State Operator's License. While speaking with WONG, Trooper Arnold observed a number of large hockey bags on the rear passenger area of the vehicle in plain view. The hockey bags appeared to be full. Based on Trooper Arnold's training and experience, large hockey bags are commonly used to transport illegal narcotics and other forms of contraband. Trooper Arnold inquired of WONG about what was inside of the hockey bag. WONG provided conflicting responses to Trooper Arnold of what was contained inside of the hockey bags. WONG first stated that the bags contained kitchen utensils, but then stated he believed the bags to contain clothing. WONG finally stated that he didn't know what was in the hockey bags.

10.      United States Border Patrol (USBP) K9 Agent George DeJesus arrived to assist Trooper Arnold on the vehicle stop. Agent DeJesus deployed his K9 partner "Connie" to perform a free air sniff of the exterior of the 2019 Gray Jeep. Agent DeJesus observed that K9 "Connie", who is certified to detect controlled substances, alerted to the exterior of the vehicle. Agent DeJesus then deployed K9 "Connie" inside of the vehicle, at which point K9 "Connie" alerted to and indicated to a hockey bag on the rear seat. Upon unzipping the hockey bag, law enforcement Officers observed that it contained a

large amount of clear vacuum sealed bags. The vacuum sealed bags contained a green leafy substance, which appeared to be Marihuana. Upon a New York State Department of Motor Vehicles records check, Trooper Arnold observed that WONG'S license was suspended. WONG was placed under arrest and transported to the DEA Office in Plattsburgh, NY. The 2019 Gray Jeep was transported to the DEA Office in Plattsburgh, at which time Agents located a total of three (3) duffel bags inside of the vehicle. Agents observed that each of the hockey bags contained numerous clear vacuum sealed bags, containing what was believed to be Marihuana. A field test sample was conducted from one of the vacuum sealed bags with the results showing positive for Marihuana. The three hockey bags containing the Marihuana had an approximate field weight of 111 pounds with plastic packaging.

11. Further investigation revealed that WONG rented the Jeep.

## Stop of the Rogue and Seizure of Marijuana

12. At the same time that Trooper Arnold stopped the Jeep, additional NYSP Troopers activated their emergency lights to stop the white Mercedes four door and the 2018 Nissan Rogue for separate traffic violations. The white Mercedes and the 2018 Nissan Rogue continued on I-87, and eventually stopped approximately 400 meters south of the Gray Jeep.

13. Trooper Coupal approached the Nissan Rogue and identified the driver and sole occupant as Hailang XIE. XIE presented Trooper Coupal with a New York State Operator's license. Trooper Coupal encountered difficulty in having a conversation with XIE being that there was an apparent language barrier. While attempting to speak with XIE, Trooper Coupal observed several large hockey bags in the rear passenger area of the vehicle in plain view. Based on Trooper Coupal's training and experience, large hockey bags are commonly used to transport illegal narcotics and other forms of contraband.

14. United States Border Patrol (USBP) K9 Agent George DeJesus arrived to assist Trooper Coupal on the vehicle stop. Agent DeJesus deployed his K9 partner "Connie" to perform a free air sniff

of the exterior of the 2018 Nissan Rogue. Agent DeJesus observed that K9 "Connie", who is certified to detect controlled substances, alerted to the exterior of the vehicle. Agent DeJesus then deployed K9 "Connie" inside of the vehicle, at which point K9 "Connie" alerted to and indicated to a hockey bag. Upon unzipping one of the hockey bags, law enforcement Officers observed that it contained a large amount of clear vacuum sealed bags. The vacuum sealed bags contained a green leafy substance, which appeared to be Marihuana. XIE was placed under arrest and transported to the DEA Office in Plattsburgh, NY. The 2018 Nissan was transported to the DEA Office in Plattsburgh, at which time Agents located a total of four (4) duffel bags inside of the vehicle. Agents observed that each of the hockey bags contained numerous clear vacuum sealed bags, containing what was believed to be Marihuana. A field test sample was conducted from one of the vacuum sealed bags with the results showing positive for Marihuana. The four hockey bags containing the Marihuana had an approximate field weight of 131 pounds with packaging.

15. Further investigation revealed that XIE rented the Nissan Rogue.

## Conclusion

16. Based on my training and experience, I know that the quantity of marijuana WONG and XIE each possessed is not a personal use quantity and is indicative of the intent to distribute.